**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **MOHAMMAD H.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 20-1178** |
| **v.** | * | |
| | * | |
| | * | |
| **ANDREW M. SAUL,** | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Plaintiff Mohammad H. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 13).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

On February 4, 2019, Administrative Law Judge ("ALJ") Thomas Mercer Ray held a hearing in Washington D.C., where Plaintiff and a vocational expert ("VE") testified.  R. at 15, 44-62.  The ALJ held a supplemental hearing on April 17, 2019.  R. at 30-43.  The ALJ thereafter found on May 15, 2019, that Plaintiff was not disabled from his alleged onset date of disability of September 14, 2014, through the date of the ALJ's decision.  R. at 12-29.  In so finding, the ALJ found that Plaintiff had engaged in substantial, gainful activity ("SGA") from September 2014 to December 2015 but that there was a continuous twelve-month period during which he did not engage in SGA.  R. at 18-19.  The ALJ found that during this period Plaintiff's respiratory disorder, diabetes, inflammatory bowel disease, and hypertension were severe impairments.  R. at 19.  He did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 20.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

> to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a).   [Plaintiff] could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds, stand or walk for a total of 2 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and push or pull, as much as [he] can lift and/or carry.  He could occasionally climb ramps or stairs, stoop, kneel, and crouch, could never climb ladders, ropes or scaffolds or crawl, and could frequently balance.  He could have occasional exposure to fumes, odors, dusts, gases and poor ventilation, extreme cold, extreme heat, and humidity.

R. at 20.[2]  In light of this RFC and the VE's testimony, the ALJ found that, although he could not perform his past relevant work, Plaintiff could perform other work in the national economy, such as a finish machine tender, grading and sorting worker, or inspector.  R. at 23-25.  The ALJ thus found that Plaintiff was not disabled from September 14, 2014, through May 15, 2019.  R. at 25.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on May 9, 2020, a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience.    20 C.F.R.  §§ 404.1520(a)(4)(iii),

404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.    20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite

his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).    The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the

claimant] get medical reports from [the claimant's] own medical sources."    20 C.F.R.

§§ 404.1545(a)(3), 416.945(a)(3).    The Commissioner also will consider certain non-medical

evidence and other evidence listed in the regulations.  *See id.*   If a claimant retains the RFC to

perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v.*

6

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[4] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 4-12, ECF No. 12-1.  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work.  *Id.* at 6.  In particular, he contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.*  Plaintiff also argues that the ALJ failed to evaluate properly evidence of his issues with his dominant right extremity.  *Id.* at 7-8.  Plaintiff further contends that the ALJ failed to evaluate properly the opinions of Nasreen Kango, M.D., his treating physician (R. at 314-23).  *Id.* at 8-12. Plaintiff finally maintains that the ALJ erroneously evaluated his subjective complaints.  *Id.* at 12-14.  For the reasons discussed below, the Court remands this case for further proceedings.

SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> basis, including the functions" listed in the regulations.  "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy."  The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted)

(citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

(per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*,

729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform

relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform

them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

not address.  *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding

because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ

erroneously expressed claimant's RFC first and then concluded that limitations caused by

claimant's impairments were consistent with that RFC).

The Court first addresses the ALJ's evaluation of Dr. Kango's opinions.  Pl.'s Mem.

Supp. Mot. Summ. J. 8-12, ECF No. 12-1.  In weighing the opinion evidence, the ALJ stated:

> The undersigned has also given little weight to Dr. Kango's January 2019
> physical and mental combined [RFC] report because her opinion, including the

degree of limitation she described, far exceeds what is supported by her own treatment notes. Furthermore, her opinion is not consistent with other medical and nonmedical evidence in the record. As discussed above, examinations reveal pain behaviors, tenderness, and, on one occasion, wheezes, but have otherwise been largely normal since [Plaintiff's] September 2014 hospitalization. Notably, Dr. Kango opined that [Plaintiff] has a marked limitation in maintaining concentration. However, her treatment notes do not document any examination findings regarding concentration or mental status. Furthermore, Dr. Steinberg [Plaintiff's treating physician] observed an alert and oriented individual with intact cognitive function.

R. at 23.

For claims—like [Plaintiff's]—filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (alteration in original)

(citations omitted).

Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

9

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (alterations in original) (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2)(i)-(6).   While "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385.

Here, the ALJ stated that he had considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. R. at 20.  It does not appear, however, that the ALJ meaningfully considered each of the § 404.1527(c) factors before deciding how much weight to give Dr. Kango's opinion. *See Dowling*, 986 F.3d at 385; *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020).   Although it seems that the ALJ considered the consistency of the opinion with the record as a whole and its supportability, the ALJ apparently did not consider the length, nature, and extent of Dr. Kango's treatment relationship; the frequency of her examination of Plaintiff; her specialization; and other factors under 20 C.F.R. § 404.1527(c)(6), such as her understanding of disability programs and their evidentiary requirements and the extent of her familiarity with the other information in Plaintiff's case record.  Remand is thus warranted under *Dowling*.

The Court next turns to Plaintiff's assertion that the ALJ applied an improper standard in evaluating his pain.  Pl.'s Mem. Supp. Mot. Summ. J. 12-14, ECF No. 12-1.  The Fourth Circuit recently reiterated the standard used by ALJs to evaluate a claimant's symptoms:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.

> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled.  At this step, objective evidence is *not* required to find the claimant disabled.  SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques."  Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them.

*Arakas*, 983 F.3d at 95 (alteration in original) (citations omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  R. at 21.  As noted above, there does not need to be objective evidence of the claimant's pain itself or its intensity.  *Arakas*, 983 F.3d at 95.  Rather, the claimant is entitled to rely exclusively on subjective evidence to prove the second part of the test above.  *Id.*  In other words, "disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms."  *Id.* at 98.  "Thus, [the ALJ] 'improperly increased [Plaintiff's] burden of proof' by effectively requiring [his] subjective descriptions of [his] symptoms to be supported by objective medical evidence."  *Id.* at 96 (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)).  Moreover, to the extent that the ALJ stated that he considered other evidence, "ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record."  *Id.* at 97.  The Court thus remands on this ground as well.

In sum, the ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'"  *Woods v. Berryhill*, 888

F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189).  An

ALJ's failure to do so constitutes reversible error.  *Lewis*, 858 F.3d at 868.  Because "meaningful

review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the

Court remands this case for further proceedings.  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th

Cir. 2019) (citing *Woods*, 888 F.3d at 694).

Because the Court remands this case on other grounds, the Court need not address

Plaintiff's remaining arguments.  In any event, the ALJ also should address these other issues

raised by Plaintiff.  *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.\* (4th Cir. 2015)

(per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law

Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an

administrative law judge upon a court remand, and that the ALJ must consider de novo all

pertinent issues.").

## V

### Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 13)

is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  Plaintiff's

alternative motion for remand (ECF No. 12) is **GRANTED**.  Defendant's final decision is

**REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for

further proceedings consistent with this opinion.  A separate order will issue.

Date: March 29, 2021                                    _____/s/_____
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge